# EXHIBIT A

DocuSign Envelope ID: 46E95841-908B-477D-9575-ECD48233F529

# Master Services Agreement

This Master Services Agreement (this "**Agreement**"), dated as of March 8, 2021 (the "**Effective Date**"), is by and between Dressler Consulting, LLC, a limited liability company of the State of New York, with offices located at 1664 DeMott Ct., Merrick, NY 11566 ("**Dressler**" or "**Service Provider**") and [Rhapsody International, INC a corporation of the state of Delaware, with offices located at 701 5th Avenue, Suite 3100, Seattle, WA 98104 ("**Customer**" and, together with Dressler, the "**Parties,**" and each a "**Party**").

WHEREAS Dressler has the capability and capacity to provide certain information technology and development services; and

WHEREAS Customer desires to retain Dressler to provide the said services and Dressler is willing to perform such services under the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Dressler and Customer agree as follows:

1. Services.

1.1 Dressler shall provide to Customer the services (the "**Services**") set out in one or more statements of work to be issued by Customer and accepted by Dressler (each, a "**Statement of Work**"). The initial accepted Statement of Work is attached hereto as Exhibit A. Additional Statements of Work shall be deemed issued and accepted only if signed by the Service Provider Contract Manager and the Customer Contract Manager, appointed pursuant to Section 2.1(a) and Section 3.1, respectively.

2. Service Provider Obligations. Dressler shall:

2.1 Designate employees or contractors that it determines, in its sole discretion, to be capable of filling the following positions:

(a) A primary contact to act as its authorized representative with respect to all matters pertaining to this Agreement (the "**Service Provider Contract Manager**").

(b) A number of employees or contractors that it deems sufficient to perform the Services set out in each Statement of Work, (collectively, with the Service Provider Contract Manager, "**Provider Representatives**").

2.2 Maintain accurate records relating to the provision of the Services under this Agreement including records of the time spent and materials used by Dressler in providing the Services. During the Term as defined in Section 11.1 herein and for a period of one (1) year thereafter, upon Customer's written request, Dressler shall allow Customer or Customer's representative to inspect and make copies of such records in connection with the provision of the Services,

provided that Customer provides Dressler with at least fourteen (14) business days advance written notice of the planned inspection. Any such inspection shall take place during regular business hours, and any such inspection shall occur no more than once per year.

3. Customer Obligations. Customer shall:

3.1 Designate one of its employees or agents to serve as its primary contact with respect to this Agreement and to act as its authorized representative with respect to matters pertaining to this Agreement (the "**Customer Contract Manager**"), with such designation to remain in force unless and until a successor Customer Contract Manager is appointed.

3.2 Require that the Customer Contract Manager respond promptly to any reasonable requests from Dressler for instructions, information, or approvals required to enable Dressler to provide the Services.

3.3 Cooperate with Dressler in its performance of the Services and provide access to Customer's premises, employees, contractors, and equipment as required to enable Dressler to provide the Services.

3.4 Take all steps necessary, including obtaining any required licenses or consents, to prevent Customer-caused delays in Dressler's provision of the Services.

4. Fees and Expenses.

4.1 In consideration of the provision of the Services by Dressler and the rights granted to Customer under this Agreement, Customer shall pay the fees set out in the applicable Statement of Work or Dressler's then-current fee schedule. Payment to Dressler of such fees and the reimbursement of expenses pursuant to this Section 4 shall constitute payment in full for the performance of the Services. Unless otherwise provided in the applicable Statement of Work, said fee will be payable within thirty (30) days of receipt by the Customer of an invoice from Dressler.

4.2 Customer shall reimburse Dressler for all reasonable expenses incurred in accordance with the Statement of Work within thirty (30) days of receipt by the Customer of an invoice from Dressler accompanied by receipts and reasonable supporting documentation.

4.3 Customer shall be responsible for all sales, use and excise taxes and any other similar taxes, duties and charges of any kind imposed by any federal, state or local governmental entity on any amounts payable by Customer hereunder, provided that in no event shall Customer pay or be responsible for any taxes imposed on, or regarding, Dressler's income, revenues, gross receipts, personnel, or real or personal property or other assets.

4.4 Except for invoiced payments that the Customer has successfully disputed, all late payments shall bear interest at the lesser of the rate of one and one-half percent (1.5%) per month or the highest rate permissible under applicable law, calculated daily and compounded monthly. Customer shall also reimburse Dressler for all costs incurred in enforcing this

Agreement including, without limitation, attorneys' fees and costs. In addition to all other remedies available under this Agreement or at law (which Dressler does not waive by the exercise of any rights hereunder), Dressler shall be entitled to suspend the provision of any Services if the Customer fails to pay any amounts when due hereunder and such failure continues for fourteen (14) days following written notice thereof.

5. Limited Warranty and Limitation of Liability.

5.1 Dressler warrants that it shall perform the Services:

(a) In accordance with the terms and subject to the conditions set out in the respective Statement of Work and this Agreement.

(b) Using personnel of commercially reasonable skill, experience, and qualifications.

(c) In a timely, workmanlike, and professional manner in accordance with generally recognized industry standards for similar services.

5.2 DRESSLER MAKES NO WARRANTIES EXCEPT FOR THOSE PROVIDED IN SECTION 5.1, ABOVE. ALL OTHER WARRANTIES, EXPRESS AND IMPLIED, ARE EXPRESSLY DISCLAIMED.

6. Intellectual Property.

6.1 All intellectual property rights, including copyrights, patents, patent disclosures and inventions (whether patentable or not), trademarks, service marks, trade secrets, know-how and other confidential information, trade dress, trade names, logos, corporate names and domain names, together with all of the goodwill associated therewith, derivative works and all other rights (collectively, "**Intellectual Property Rights**") in and to all documents, work product and other materials that are delivered to Customer under this Agreement or prepared by or on behalf of Dressler in the course of performing the Services, including any items identified as such in a Statement of Work (collectively, the "**Deliverables**"), except for any Confidential Information of Dressler shall be owned by Customer. To the extent necessary to ensure commercial utilization of the Intellectual Property Rights described in this Section, Dressler hereby grants Customer a license to use all Intellectual Property Rights in the Deliverables free of additional charge and on a non-exclusive, worldwide, non-transferable, non-sublicensable, fully paid-up, royalty-free and perpetual basis to the extent necessary to enable Customer to make reasonable use of the Deliverables and the Services.

6.2 Should Customer or any of its agents or representatives seek to obtain letters, patents, trademarks or copyrights in any country of the world on all or part of the Services developed under this Agreement, Dressler agrees to cooperate, with appropriate and reasonable compensation, in providing information, completing forms, performing actions and obtaining the necessary signatures or assignments required to obtain such letters, patents, trademarks or copyrights.

7. Dressler's Proprietary Software Programs.

7.1 Notwithstanding the provisions of Sections 6.1 and 6.2 above, it is understood and agreed that Dressler may, in its sole discretion, use its proprietary software programs in providing Services. If Dressler uses any such proprietary software programs Customer shall not market or in any way use such software programs as independent "stand-alone" programs without the express written consent of Dressler, and Customer shall not acquire any right, title or interest to such programs.

8. Rights in Work.

8.1 The parties acknowledge that any work performed by Dressler for Customer is being performed at the insistence of Customer and shall be deemed "work made for hire" under United States copyright law.

8.2 Customer shall have the right to use the whole work, any part or parts thereof, or none of the work, as it sees fit. Customer may alter the work, add to it, or combine it with any other work or works, at its sole discretion.

8.3 Whenever an invention or discovery is made by Dressler either solely or in collaboration with others, including employees or agents of Dressler under or relating to this Agreement, and such invention or discovery is not reasonably construed to be part of the Services or a Deliverable in any Statement of Work, Dressler shall have all right, title and interest in and to such invention(s) and/or discovery(s). As used herein, the terms: (1) "invention" or "discovery" include any art, machine, manufacture, design of composition of matter, or any new and useful improvement thereof where it is or may be patentable under the patent laws of the United States or of any foreign country; and (2) "made," when used in relation to any invention or discovery, means the conception of the first actual or constructive reduction to practice of such invention.

8.5 The Parties' obligations under this Agreement shall survive expiration or termination of this Agreement and any amendments thereto.

9. Compliance with Laws.

9.1 Customer and Dressler each shall comply with the provisions of all applicable federal, state, county and local laws, ordinances, regulations and codes including, but not limited to, Customer's and Dressler's obligations as employers with regard to the health, safety and payment of its employees, and identification and procurement of required permits, certificates, approvals and inspections in Customer's and Dressler's performance of this Agreement.

9.2 Customer and Dressler acknowledge that software and all related technical information, documents and materials are subject to export controls under the U.S. Export Administration Regulations. Customer and Dressler will; (i) comply strictly with all legal requirements

established under these controls, (ii) cooperate fully with the other party in any official or unofficial audit or inspection that relates to these controls, and (iii) not export, re-export, divert, transfer or disclose, directly or indirectly, any software or related technical information, document or material or direct products thereof to any country so restricted by the U.S. Export Administration Regulations, as modified from time to time, or to any national or resident thereof.

10. Confidentiality.

10.1 From time to time during the Term of this Agreement, either Party (as the "**Disclosing Party**") may disclose or make available to the other Party (as the "**Receiving Party**"), non-public, proprietary, and confidential information of Disclosing Party that, (i) if disclosed in writing or other tangible form is clearly labeled as "confidential," (ii) if disclosed orally, is identified as confidential when disclosed and within seven (7) days thereafter, is summarized in writing and confirmed as confidential or (iii) given the nature and circumstances of disclosure is reasonably considered to be confidential with a specific designation as such ("**Confidential Information**"); provided, however, that Confidential Information does not include any information that: (a) is or becomes generally available to the public other than as a result of Receiving Party's breach of this Section 10; (b) is or becomes available to the Receiving Party on a non-confidential basis from a third-party source, provided that such third party is not and was not prohibited from disclosing such Confidential Information; (c) was in Receiving Party's possession prior to Disclosing Party's disclosure hereunder; or (d) was or is independently developed by Receiving Party without using any Confidential Information. The Receiving Party shall: (a) protect and safeguard the confidentiality of the Disclosing Party's Confidential Information with at least the same degree of care as the Receiving Party would protect its own Confidential Information, but in no event with less than a commercially reasonable degree of care; (b) not use the Disclosing Party's Confidential Information, or permit it to be accessed or used, for any purpose other than to exercise its rights or perform its obligations under this Agreement; and (c) not disclose any such Confidential Information to any person or entity, except to the Receiving Party's Group who need to know the Confidential Information to assist the Receiving Party, or act on its behalf, to exercise its rights or perform its obligations under this Agreement.

10.2 If the Receiving Party is required by applicable law or legal process to disclose any Confidential Information, it shall, prior to making such disclosure, use commercially reasonable efforts to notify Disclosing Party of such requirements to afford Disclosing Party the opportunity to seek, at Disclosing Party's sole cost and expense, a protective order or other remedy. For purposes of this Section 10 only, Receiving Party's Group shall mean the Receiving Party's affiliates and its or their employees, officers, directors, shareholders, partners, members, managers, agents, independent contractors, service providers, sublicensees, subcontractors, attorneys, accountants, and financial advisors.

11. Term, Termination, and Survival.

11.1 This Agreement shall commence as of the last date that any Party has executed this Agreement (the "Effective Date") and shall continue thereafter until the completion of the

DocuSign Envelope ID: 46E95841-908B-477D-9575-ECD48233F529

Services under all Statements of Work unless sooner terminated pursuant to Section 11.2 or Section 11.3 (the "Term").

11.2 Either Party may terminate this Agreement, effective upon written notice to the other Party (the "**Defaulting Party**"), if the Defaulting Party:

(a) Materially breaches this Agreement, and such breach is incapable of cure, or with respect to a material breach capable of cure, the Defaulting Party does not cure such breach within thirty (30) days after receipt of written notice of such breach. Such written notice must describe with specificity the basis of any alleged breach including the time, manner and subject matter of the alleged breach.

(b) Becomes insolvent or admits its inability to pay its debts generally as they become due.

(c) Becomes subject, voluntarily or involuntarily, to any proceeding under any domestic or foreign bankruptcy or insolvency law, which is not f dismissed or vacated within forty-five (45) days after filing.

(d) Is dissolved or liquidated or takes any corporate action for such purpose.

(e) Makes a general assignment for the benefit of creditors.

(f) Has a receiver, trustee, custodian, or similar agent appointed by order of any court of competent jurisdiction to take charge of or sell any material portion of its property or business.

11.3 Notwithstanding anything to the contrary in Section 11.2(a), Dressler may terminate this Agreement before the expiration date of the Term on written notice if Customer fails to pay any amount when due hereunder and such failure continues for: fourteen (14) days after Customer's receipt of written notice of nonpayment; or (b) more than three (3) times in any twelve (12) month period.

11.4 The rights and obligations of the Parties set forth in this Agreement which, by their nature, should survive termination or expiration of this Agreement, will survive any such termination or expiration of this Agreement.

12. Limitation of Liability.

12.1 IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER OR TO ANY THIRD PARTY FOR ANY LOSS OF USE, REVENUE, OR PROFIT OR LOSS OF DATA OR DIMINUTION IN VALUE, OR FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL, OR PUNITIVE DAMAGES WHETHER ARISING OUT OF BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, REGARDLESS OF WHETHER SUCH DAMAGE WAS FORESEEABLE AND WHETHER OR NOT THE APPLICABLE PARTY HAS BEEN ADVISED OF THE

POSSIBILITY OF SUCH DAMAGES, AND NOTWITHSTANDING THE FAILURE OF ANY AGREED OR OTHER REMEDY OF ITS ESSENTIAL PURPOSE.

12.2 IN NO EVENT SHALL EITHER PARTY'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF OR RELATED TO BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, EXCEED THE AGGREGATE AMOUNTS PAID OR PAYABLE TO DRESSLER PURSUANT TO THE APPLICABLE STATEMENT OF WORK PRECEDING THE EVENT GIVING RISE TO THE CLAIM.

13. Indemnification.

13.1 Each Party shall indemnify, defend and hold harmless the other, its employees, principals (partners, shareholders or other holders of an ownership interest, as the case may be) and agents, from and against any third party claims, demands, losses, damages or expenses relating to bodily injury or death of any person or damage to real and/or tangible personal property directly caused solely by the negligence or willful conduct of the indemnifying Party, its personnel or agents in connection with the performance of the Services hereunder. it is expressly agreed that both Parties' liability shall be limited by the terms and provisions of Section 12.2 above and that, with respect to any remaining obligations to pay any third party claims, demands, losses, damages or expenses that are not limited by the terms of Section 12.2 above each Party's obligations of indemnity under this Section 13 shall be effective only to the extent of each Party's pro rata share of liability. To receive the foregoing indemnities, the Party seeking indemnification must promptly notify the other in writing of a claim or suit and provide reasonable cooperation (at the indemnifying Party's expense) and full authority to defend or settle the claim or suit. The indemnifying Party shall have no obligation to indemnify the indemnified Party under any settlement made without the indemnifying Party's written consent.

14. Insurance.

14.1 Dressler shall maintain general business liability coverage in the amount of $1,000,000.00 subject to all endorsements, restrictions and limitations as stated in the applicable insurance policies.

15. Covenant of Non-Solicitation.

Neither Party will solicit, hire, contract with, or engage the employment of services of any of the other party's staff, agents or subcontractors for a period of one (1) year following termination of this Agreement.

16. Entire Agreement.

16.1 This Agreement, including and together with any related Statements of Work, exhibits, schedules, attachments and appendices, constitutes the sole and entire agreement of the Parties with respect to the subject matter contained herein, and supersedes all prior and

contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter. The Parties acknowledge and agree that if there is any conflict between the terms and conditions of this Agreement and the terms and conditions of any Statement of Work, the terms and conditions of this Agreement shall supersede and control.

17. Notices.

17.1 All notices, requests, consents, claims, demands, waivers and other communications under this Agreement (each, a "**Notice**", and with the correlative meaning "**Notify**") must be in writing and addressed to the respective Party at its address set forth below (or to such other address that the receiving Party may designate from time to time in accordance with this Section). Unless otherwise agreed herein, all Notices must be delivered by personal delivery, nationally recognized overnight courier or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only; (a) on receipt by the receiving Party, and (b) if the Party giving the Notice has complied with the requirements of this Section 17.

| | |
|---|---|
| Notice to Customer: | 701 5th Avenue,<br>Ste. 3100<br>Seattle, WA. 98104 |
| | Attention: Legal Department |
| Notice to Dressler: | 1664 DeMott Ct.<br>Merrick, NY 11566 |
| | Attention: Chris Dressler |

18. Severability.

18.1 If any term or provision of this Agreement is found by a court of competent jurisdiction to be invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction; provided, however, that if any fundamental term or provision of this Agreement is invalid, illegal or unenforceable, the remainder of this Agreement shall be enforceable. Upon a determination that any term or provision is invalid, illegal or unenforceable, the court may modify this Agreement to effect the original intent of the Parties as closely as possible in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

19. Amendments.

19.1 No amendment to, or modification of or rescission, termination or discharge of this Agreement is effective unless it is in writing, identified as an amendment to or rescission,

termination or discharge of this Agreement and signed by an authorized representative of each Party.

20. Waiver.

20.1 No waiver by any Party of any of the provisions of this Agreement shall be effective unless explicitly set forth in writing and signed by the Party so waiving. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

21. Assignment.

21.1 Neither Party shall assign, transfer, delegate or subcontract any of its rights or delegate any of its obligations under this Agreement without the prior written consent of the otherHowever, either Party may assign or transfer any of its rights or delegate any of its obligations to any affiliate or to any person acquiring all or substantially all of Service Provider's assets without the other's consent.

22. Successors and Assigns.

22.1 This Agreement is binding on and inures to the benefit of the Parties to this Agreement and their respective permitted successors and permitted assigns.

23. Relationship of the Parties.

23.1 The relationship between the Parties is that of independent contractors. The details of the method and manner for performance of the Services by Dressler shall be under its own control, Customer being interested only in the results thereof. Dressler shall be solely responsible for supervising, controlling and directing the details and manner of the completion of the Services. Nothing in this Agreement shall give the Customer the right to instruct, supervise, control, or direct the details and manner of the completion of the Services. The Services must meet the Customer's final approval and shall be subject to the Customer's general right of inspection throughout the performance of the Services and to secure satisfactory final completion. Nothing contained in this Agreement shall be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment or fiduciary relationship between the Parties, and neither Party shall have authority to contract for or bind the other Party in any manner whatsoever.

24. No Third-Party Beneficiaries.

DocuSign Envelope ID: 46E95841-908B-477D-9575-ECD48233F529

24.1 This Agreement benefits solely the Parties to this Agreement and their respective permitted successors and assigns and nothing in this Agreement, express or implied, confers on any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

25. Equitable Relief.

25.1 In the event either Party to this Agreement breaches, or threatens to breach, any of the covenants expressed in this Agreement, the damages to the non-breaching Party will be great and irreparable and difficult to quantify; therefore, each Party may apply to a court of competent jurisdiction for injunctive relief to restrain such breach or threat of breach, without disentitling the other Party from any other relief in either law or equity. In the event that any or all of the covenants expressed herein shall be determined by a court of competent jurisdiction to be invalid or unenforceable, by reason of its geographic or temporal restrictions being too great, or by reason that the range of activities covered are too great, or for any other reason, these covenants shall be interpreted to extend over the maximum geographic area, period of time, range of activities or other restrictions to which they may be enforceable.

26. Independent Contractor.

26.1 Dressler is and shall at all times be an independent contractor and shall not be deemed to be an employee or agent of Customer. Nothing in this Agreement is intended to, or shall be deemed to, constitute a partnership or joint venture between the Parties.

27. Choice of Law.

27.1 This Agreement and all related documents including all exhibits attached hereto, and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of the State of New York, United States of America (including its statutes of limitations and applicable state choice of law statutes, without giving effect to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of New York.

28. Choice of Forum.

28.1 Each Party irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind whatsoever against the other Party in any way arising from or relating to this Agreement, including all exhibits, schedules, attachments and appendices attached to this Agreement, and all contemplated transactions, including contract, equity, tort, fraud and statutory claims, in any forum other than the state or federal courts located in the State of New York sitting in Nassau County.Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of such court(s) and agrees to bring any such action, litigation or proceeding only in such court. Each Party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

29. WAIVER OF JURY TRIAL.

29.1 EACH PARTY ACKNOWLEDGES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT, INCLUDING ANY STATEMENTS OF WORK, ADDENDUMS, EXHIBITS, SCHEDULES, ATTACHMENTS, AND APPENDICES ANCILLARY TO THIS AGREEMENT, IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING ANY STATEMENTS OF WORK, ADDENDUMS, EXHIBITS, SCHEDULES, ATTACHMENTS OR APPENDICES ANCILLARY TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY.

30. Counterparts.

30.1 This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same Agreement. Notwithstanding anything to the contrary in Section 17, a signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

31. Force Majeure.

31.1 Dressler shall not be liable or responsible to Customer, nor be deemed to have defaulted or breached this Agreement, for any failure or delay in fulfilling or performing any term of this Agreement when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of Dressler including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other civil unrest, national emergency, executive orders, sanction resolutions, tariffs, revolution, insurrection, epidemic, lock-outs, strikes or other labor disputes (whether or not relating to either Party's workforce), or restraints or delays affecting carriers or inability or delay in obtaining supplies of adequate or suitable materials, materials or telecommunication breakdown or power outage, provided that, if the event in question continues for a continuous period in excess of thirty (30) days, Customer shall be entitled to give notice in writing to Dressler of termination of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the Effective Date by their respective duly authorized officers.

DocuSign Envelope ID: 46E95841-908B-477D-9575-ECD48233F529

| | Rhapsody International, INC |
|---|---|
| | By DocuSigned by: Mark Kortekaas 997FDA7FCC5D4D4...<br>Name: Mark Kortekaas<br>Title: Interim CTO |

| | DRESSLER CONSULTING, LLC |
|---|---|
| | By DocuSigned by: Chris Dressler 3A1DB2EAF7D04D9...<br>Name: Chris Dressler<br>Title: CEO |

RI Legal Approved

DocuSigned by: Dan Forman FA07E591C90143B...

Dan Forman 3/12/2021

DocuSign Envelope ID: 46E95841-908B-477D-9575-ECD48233F529

**STATEMENT OF WORK ("SOW") DATED ____________**

This SOW is entered into pursuant to the terms and conditions set forth in the Master Services Agreement executed between the Parties on [INSERT DATE] (the "Agreement"). All defined terms in the Agreement shall have the same meaning as in this SOW unless otherwise stated.

[KEY ELEMENTS OF SERVICES TO BE PROVIDED, PROJECT MILESTONES, TIMING REQUIREMENTS, RESOURCE REQUIREMENTS, COMPLETION STANDARDS, FEE SCHEDULES, ACCEPTANCE TESTING PROCEDURES, AND OTHER IMPORTANT ITEMS]

## ADDENDUM TO STATEMENT OF WORK DATED ______________________

This Addendum to the Statement of Work ("SOW") dated [insert date] is entered into pursuant to the terms and conditions set forth in the Master Services Agreement executed between the Parties on [INSERT DATE] (the "Agreement"). All defined terms in the Agreement shall have the same meaning as in this SOW unless otherwise stated. This Addendum modifies the SOW as set forth below. This Addendum supersedes and replaces all conflicting terms and conditions contained in the SOW and Agreement but only to the extent expressly set forth below.